# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANTUAN WHITE,
    *Plaintiff*,

    v.

JOHN DOE, Acting District Administrator, *et al.*,
    *Defendants*.

No. 3:16-cv-01874 (JAM)

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Antuan White was incarcerated when he initiated this action, but he has since been paroled and now resides in Bridgeport, Connecticut. He filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against numerous defendants for retaliation, cruel and unusual punishment, and violations of his right to due process. After an initial review, I will dismiss the complaint in part and otherwise allow the remainder to proceed.

### BACKGROUND

The following allegations as summarized from plaintiff's lengthy complaint are accepted as true only for purposes of the Court's initial review of the legal sufficiency of plaintiff's pleadings. On January 10, 2014, while incarcerated at Osborn Correctional Institution, plaintiff saw a male correctional officer massaging the shoulders of Correctional Officer Wendy Moriarty. Plaintiff told Moriarty that he intended to file a complaint against her to her supervisors for this behavior, to which Moriarty replied with a threat that reporting her would have consequences.

Plaintiff alleges that he suffered Moriarty's consequences anyway: towards the end of the month, Moriarty approached plaintiff's cell and threatened to have him transferred to Northern

1

Correctional Institution if he did not masturbate in front of her when she came by his cell during her next tour. Moriarty also asked plaintiff if he wanted to be in a relationship with her and, although he said no, he complied with her order to masturbate in front of her because he feared for his safety. After several incidents, plaintiff eventually told Moriarty that he would no longer masturbate in front of her. Moriarty became upset, slammed the plaintiff's door and stormed off.

Moriarty issued plaintiff a disciplinary report for public indecency, and Lieutenant Torres escorted plaintiff to the restrictive housing unit. Plaintiff told Torres that Moriarty had threatened him with transfer if he did not expose himself to her; Torres replied that he would report the claim to his supervisors and agreed to be plaintiff's advocate during the disciplinary hearing. But the next day, Torres came back to plaintiff's cell and advised him not to repeat his claim against Moriarty to anyone else or otherwise Torres and his coworkers would physically beat plaintiff in his cell.

On March 3, 2014, plaintiff attended his disciplinary hearing without Torres as an advocate.[1] Plaintiff was found guilty of public indecency and received a punishment of loss of commissary for 90 days, loss of phone privileges for 90 days, punitive segregation for 15 days, and loss of 10 days of risk reduction earned credits.

On March 24, 2014, while plaintiff was still in the restrictive housing unit, he told Captain Colon about another alleged incident of sexual abuse by Moriarty—an allegation that Moriarty performed oral sex on plaintiff, *see* Doc. #1-1 at 24—and Colon reported this allegation to Duty Officer Barone and Deputy Warden Wright. That same day, Colon and Torres issued plaintiff a disciplinary report for falsely reporting this newly alleged incident against Moriarty.

---

[1] Although Torres did not appear at the hearing to be plaintiff's advocate, plaintiff appears to have had assistance from two inmate advocates, Tacuna Grear and Marcus Price. *See* Doc. #1-1 at 8.

This disciplinary ticket was dismissed and expunged only days later, because it had been issued at a time when no investigation into plaintiff's allegations had been made.[2]

After this ticket was expunged, plaintiff grieved Torres for retaliation. In response, Warden Maldonado put plaintiff on grievance restriction, prohibiting plaintiff from filing any grievances or appeals relating to Moriarty's original ticket against plaintiff for public indecency or any other allegation of sexual assault against Moriarty, because his claim was being independently investigated. *See* Doc. #1-1 at 54.

This independent investigation was a PREA (Prison Rape Elimination Act) investigation through the Connecticut State Police. Several higher ups in the DOC were notified of the investigation, including District Administrator Quiros, former Deputy Commissioner Semple, and former Commissioner Dzurenda. Several Connecticut State Police troopers participated in the investigation of plaintiff's claim of sexual abuse by Moriarty, including Officer Mazza, who interviewed plaintiff.[3] Several other DOC officers in the PREA Unit, including Lieutenant Maldonado and David McNeil, also participated in the PREA investigation.

By the end of August 2014, the Connecticut State Police closed the investigation into the Moriarty incident for lack of evidence. Doc. #1-1 at 80. As soon as Lieutenant Maldonado's portion of the PREA investigation concluded, and with the approval of McNeil, Maldonado

---

[2] Only after he had issued the disciplinary ticket did Colon later interview Moriarty regarding plaintiff's allegations. Plaintiff alleges that falsely reporting an incident was not prohibited at the time he was cited, and he attaches the disciplinary code he was given in connection with his report that prohibits "giving false information." *See* Doc. #1-1 at 28. Later revisions of the disciplinary code specifically prohibit "falsely reporting an incident." *See* Administrative Directive 9.5 at 10, *available at* http://www.ct.gov/doc/lib/doc/pdf/ad/ad0905.pdf.

[3] Plaintiff would later file a complaint against Officer Mazza with the Bureau of Professional Standards, accusing Mazza of failing to properly investigate his PREA complaint; his complaint against Mazza was later found by the Connecticut State Police to be unsubstantiated because plaintiff had refused to give a written statement. *See* Doc. #1-2 at 20–21. Plaintiff also filed a complaint against Deputy Commissioner Semple for not ensuring a fair and impartial PREA investigation; Acting Deputy Commissioner Rinaldi responded to this complaint by informing plaintiff about his grievance options. *See* Doc. #1-2 at 2.

issued plaintiff a disciplinary report almost identical to the one Torres had unsuccessfully filed against plaintiff: making a false report about Moriarty regarding sexual abuse. Plaintiff was again ushered to the restrictive housing unit to await disposition of his new disciplinary ticket.

The hearing on this new disciplinary ticket was postponed several times at the behest of correctional officers Cote and Omara, who were tasked with the investigation. Eventually, Lieutenant Hayles found plaintiff guilty of falsely reporting the Moriarty incident, and imposed a punishment of loss of commissary for 90 days, loss of phone privileges for 60 days, punitive segregation for 15 days, and loss of 10 days of risk reduction earned credits.[4] Plaintiff appealed these sanctions, and his appeal was denied by District Administrator Quiros and later by Acting Deputy Commissioner Rinaldi.

Meanwhile, in segregation between July 30, 2014, and August 13, 2014, plaintiff alleges that he was denied clean sheets and clothes, was subject to 24-hour-illumination, and was denied his one-hour-per-day of recreation. *See* Doc. #1-1 at 78. While in segregation, plaintiff verbally reported these conditions to Captain Gargullo, who verbally directed plaintiff to stop falsely reporting incidents. Doc. #1 at 28. Plaintiff was transferred in mid-October 2014 to Willard-Cybulski Correctional Institution and then later to Enfield Correctional Institution.

Plaintiff brought this action against the following defendants in their individual capacities: former Commissioner James Dzurenda, former Deputy Commissioner Scott Semple, former Acting Deputy Commissioner Monica Rinaldi, District Administrator Angel Quiros, Warden Edward Maldonado, Deputy Wardens Wright and Barone, PREA Director David McNeil, PREA Lieutenant J. Maldonado, Captain Luis Colon, former Captain Gargullo,

---

[4] Plaintiff grieved the "excessive" continuances by Cote, Omara, and Hayles, which he contends was meant to give defendants more time to formulate a reason to discipline him. The complaint was denied; it was determined that the disciplinary hearing had been timely and that the continuances had not been improper.

Lieutenant Jose Torres, Lieutenant Hayles, Correctional Officers Wendy Moriarty, Cote, and Omara and Connecticut State Police Officer Scott Mazza.[5] He claims that he suffered embarrassment and emotional distress, and seeks monetary damages and injunctive relief in the form of expungement of plaintiff's disciplinary record.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

---

[5] Plaintiff also mentions several other people in his complaint that he does not name as defendants: Connecticut State Trooper Gershowitz, Warden Kimberly Weir, and Deputy Warden Mudano. These putative defendants will be dismissed from the case. Similarly, plaintiff does not allege plausible claims against any of the unnamed "John Doe" or "Jane Doe" defendants. To the extent plaintiff attempts to name the State of Connecticut Department of Correction as a defendant, I will dismiss that claim because **Error! Main Document Only.**neither the State of Connecticut nor the Department of Correction is a person subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983); *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 271 (D. Conn. 2001) (dismissing claims against Connecticut Department of Correction because it "is not a 'person' within the meaning of § 1983").

*Eighth Amendment claims*

At the outset, the Court concludes that plaintiff has sufficiently alleged a violation of his Eighth Amendment rights by Officer Moriarty because of her alleged sexual abuse. The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. To prevail on an Eighth Amendment claim alleging unconstitutional conditions of confinement, (1) "the deprivation alleged must be, objectively, sufficiently serious," such that "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," and (2) the defendant prison official's state of mind must be at least "one of deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official may be found to be deliberately indifferent in a number of ways, including by omission if she learns of the inmate's complaints and fails to act within her responsibility to respond to unconstitutional practices. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).

Plaintiff's allegations against Moriarty for sexual abuse—that she forced plaintiff into receiving oral sex from her, and required him to masturbate in front of her under threat of retaliation—if true, suffice to state an objectively serious harm, and a subjectively culpable intent on the part of Officer Moriarty. *See Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) ("A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment."). I will allow the complaint to proceed against Moriarty on this claim.

Plaintiff also alleges an Eighth Amendment claim against Captain Gargullo for the conditions of plaintiff's confinement in segregated housing. He alleges that he was not given

clean sheets or clothes (and in fact was forced to wear other inmates' used underclothes), was denied even one hour of recreation per day, and was subject to 24-hour lighting. These allegations, if true, suffice at this stage of the proceedings to be considered sufficiently, objectively serious deprivations. *See Walker v. Schult*, 717 F.3d 119, 126–28 (2d Cir. 2013) (conditions that prevent sleep, and failure to provide hygienic materials, may state Eighth Amendment claim); *Williams v. Greifinger*, 97 F.3d 699, 706–07 (2d Cir. 1996) (clearly established law that failure to provide one hour of exercise could constitute Eighth Amendment violation). Plaintiff has also alleged that, during his confinement under these circumstances between July 30, 2014, and August 13, 2014, he verbally informed Gargullo about these conditions and that Gargullo told plaintiff to stop falsely reporting incidents, and did not remedy the conditions. *See* Doc. #1 at 28. (Plaintiff later followed up with a letter to Gargullo on August 23, 2014, after he had been released from restrictive housing. *See* Doc. #1-1 at 78.) The Court therefore concludes that plaintiff has plausibly stated an Eighth Amendment claim against Gargullo.

### *First Amendment Retaliation claims*

Plaintiff also alleges myriad First Amendment retaliation claims. A plaintiff claiming First Amendment retaliation must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). Further, this circuit treats prisoner retaliation claims "with skepticism and particular care,

because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 352; *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012).

Plaintiff alleges the following claims of retaliation: that Moriarty issued him a false disciplinary report for indecent exposure as retaliation for reporting Moriarty's contact with a male correctional officer; that Colon, Torres, McNeil, and J. Maldonado issued him a disciplinary report for falsely reporting an incident as retaliation for reporting Moriarty's sexual abuse; and that Warden Maldonado put plaintiff on grievance restriction for opposing other retaliation he received for reporting Moriarty's sexual abuse.

At this early stage of the proceedings, plaintiff has plausibly alleged a First Amendment retaliation claim against each of these defendants. His report against Moriarty, both for her conduct with a male correctional officer and with him, was protected speech. The alleged punitive actions taken against him were adverse actions. And the temporal proximity between plaintiff's speech and the adverse actions leads to an inference of retaliation. *See also Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002) (temporal proximity is circumstantial evidence of retaliation in First Amendment prisoner cases). Plaintiff's retaliation claims against Moriarty, Colon, Torres, McNeil, J. Maldonado, and Warden Maldonado may proceed.[6]

---

[6] To the extent plaintiff claims a constitutional violation is established solely by the falsity of the misbehavior reports against him, such a claim is not actionable other than as evidence of First Amendment retaliation. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report").

### PREA claims

Plaintiff also alleges that several defendants—Trooper Mazza, Quiros, Semple, Dzurenda, J. Maldonado, Wright, Barone, and McNeil—were negligent or ineffective in investigating plaintiff's claim under the Prison Rape Elimination Act (PREA), 42 U.S.C. § 15601, *et seq*. But PREA does not create a private right of action for inmates, and so plaintiff does not state a claim upon which relief under PREA can be granted. *See Jones v. Forbes*, 2016 WL 4435081, at *3 (D. Conn. 2016) (citing cases). The claims against Trooper Mazza, Quiros, Semple, Dzurenda, J. Maldonado, Wright, Barone, and McNeil relating to their diligence in or knowledge of the PREA investigation are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Due Process claims

Finally, plaintiff's complaint may be construed to allege denial-of-due-process claims in connection with his several disciplinary hearings. The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The "standard analysis" for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).[7]

---

[7] Of course, the Due Process Clause protects both a right to "substantive" due process and "procedural" due process. A substantive due process claim requires a plaintiff to show that government officials have deprived plaintiff of a fundamental constitutional right and that they have done so under circumstances that are no less than "arbitrary" and "outrageous," typically as demonstrated by conduct that "shocks the conscience." *See, e.g.*, *United States v. Medunjanin*, 752 F.3d 576, 590 (2d Cir. 2014) (substantive due process has generally protected "matters relating to marriage, family, procreation, and the right to bodily integrity"); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262–63 (2d Cir. 1999) (substantive due process standards violated "only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority"); *Velez v. Levy*, 401 F.3d 75, 93–94 (2d Cir. 2005) (describing the "shocks the conscience" standard). Because the essence of plaintiff's claim is that he was subject by Moriarty to conscience-shocking sexual degradation in violation of the Eighth Amendment and otherwise retaliated

In the prison context (involving someone whose liberty interests have already been severely restricted because of his or her confinement in a prison), a prisoner plaintiff must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of 30 days confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. *Id.* at 486. Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

I cannot conclude that the discipline imposed on plaintiff as a result of his several disciplinary processes—15 days each in restrictive house—is severe enough to infringe on a protected liberty interest. And even if it did infringe on plaintiff's protected liberty interest, plaintiff has failed to allege that he was denied that liberty interest without being afforded due process of law. The procedural safeguards to which plaintiff is entitled before being deprived of a constitutionally significant liberty interest are well-established. These requirements include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional institution's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in

---

against in violation of the First Amendment because he opposed Moriarty's conduct, I do not understand the complaint to additionally allege a violation of substantive due process distinct from a violation of procedural due process. *See, e.g., Graham v. Connor*, 490 U.S. 386, 394-95 & n.10 (1989) (noting how Eighth Amendment displaces parallel substantive due process claim for mistreatment of prisoners).

some circumstances, the right to assistance in preparing a defense. *See Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

Plaintiff has not plausibly alleged any failure of notice, opportunity to appear, or a written statement explaining the actions taken in his several disciplinary actions. He asserts first that Torres reneged on his agreement to be plaintiff's advocate, *see* Doc. #1 at 21, but that, alone, is insufficient to establish a due process violation. *See Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011) ("failure to comply with a state law or administrative directive does not by itself establish a violation of § 1983"); *Sira*, 380 F.3d at 69 (no due process right to counsel or confrontation at prison disciplinary hearing). Nor does it appear to be a violation of the DOC's administrative directives at all. *See* Administrative Directive 9.5 at 17, *available at* http://www.ct.gov/doc/lib/doc/pdf/ad/ad0905.pdf ("If the appointed advocate cannot appear at the hearing, another advocate may be appointed to assist the inmate, or for good cause, the hearing may be continued.").

Similarly, the allegations that Cote, Omara, and Hayles improperly continued plaintiff's hearing do not establish a due process violation because it appears that the hearing occurred within the proper time period, as explained by Weir and Quiros in letters to plaintiff. *See* Doc. #1-2 at 13–14, 18. *See Harris*, 441 F. App'x at 775. Plaintiff, therefore, received all the process he was due under *Wolff v. McDonnell*, 418 U.S. 539 (1974), and his procedural due process claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Even if these allegations could plausibly establish a violation of plaintiff's procedural due process rights, it is clear that Torres, Cote, Omara, and Hayles are entitled at the least to qualified immunity from plaintiff's claim for money damages. Not every violation of the Constitution may justify an award of money damages against a correctional official, because the doctrine of

qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Carroll v. Carman*, 135 S. Ct. 348, 351 (2014). As the Supreme Court has stated, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Richard*, 134 S. Ct. 2012, 2023 (2014). No objectively reasonable correctional official would have believed that not being plaintiff's advocate or that requesting several (permissible) continuances deprived plaintiff of a constitutionally protected liberty interest. These claims are dismissed to the extent plaintiff seeks money damages.[8]

### Remaining Claims

Finally, plaintiff has also alleged a violation of 42 U.S.C. § 1985(3), which requires him to show that (1) defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act taken in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of a right or privilege. *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). I will dismiss this claim because plaintiff has failed to show that the conspiracy was motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus." *Dolan*, 794

---

[8] Qualified immunity would also bar any due process claims against Quiros and Rinaldi, who merely denied plaintiff's appeals of this discipline. Finally, I am also not convinced that any claim for injunctive relief in the form of expungement of the two fabricated incident reports, *see* Doc. #1 at 49, would not be moot in light of plaintiff's being paroled. *See* Administrative Directive 9.5 at 22, *available at* http://www.ct.gov/doc/lib/doc/pdf/ad/ad0905.pdf ("Once an inmate discharges from the Department of Correction, penalties and/or sanctions shall not resume should the inmate return to custody.").

F.3d at 296. There are no allegations suggesting any defendant acted because of animus for plaintiff's race or some other class-based characteristic.

**ORDERS**

The Court enters the following orders:

(1)     The following claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1): all claims pursuant to 42 U.S.C. § 1985; any claims against John or Jane Does, or against the State of Connecticut or Department of Correction; all PREA claims against Mazza, Quiros, Semple, Dzurenda, J. Maldonado, Wright, Barone, and McNeil; and the due process claims against Torres, Rinaldi, Quiros, Cote, Omara, and Hayles. The following claims will proceed: Eighth Amendment claims against Moriarty and Gargullo; and First Amendment retaliation claims against Moriarty, Colon, Torres, McNeil, J. Maldonado, and Warden Maldonado.

(2)     The Clerk shall mail a service packet to plaintiff, who is responsible for serving all defendants that have not already been dismissed within **21 days** of receiving the service packet.

(3)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, pursuant to Federal Rule of Civil Procedure 12. If defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

(5)     All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

(6)     The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendant or defendant's attorney of his new address.

(9)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

It is so ordered.

Dated at New Haven, Connecticut this 13th day of June 2017.

/s/*Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge