UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------x
                                            :
ANTUAN WHITE                                :          3:16CV1874 (JAM)
                                            :
v.                                          :
                                            :
JOHN DOE, ET AL.,                           :          DATE: AUGUST 26, 2020
                                            :
                                            :
-------------------------------------------------------x

RULING ON PLAINTIFF'S MOTION TO COMPEL (DOC. NO. 107)

I.    BACKGROUND

The plaintiff, Antuan White, a *pro se* inmate, commenced this action on November 14, 2016 against multiple parties in their individual capacities. (Doc. No. 1). Following the Court's Initial Review Order, the following claims remain: "[the] Eighth Amendment claims against Moriarty and Gargullo; and [the] First Amendment retaliation claims against Moriarty, Colon, Torres, McNeil, J. Maldonado, and Warden Maldonado." (Doc. No. 12 at 13). On March 13, 2020, the plaintiff filed a Motion to Compel (Doc. No. 107) and brief in support. (Doc. No. 108 ["Pl. Mem."]). United States District Judge Jeffrey A. Meyer referred the plaintiff's motion to the undersigned on March 17, 2020. On May 8, 2020, the defendants filed their opposition, (Doc. No. 115 ["Def. Mem."]), and on August 18, 2020,[1] the plaintiff filed a reply with the assistance of the Inmate Legal Assistance Program (Doc. No. 125), along with his own 15-page reply brief. (Doc. No. 126). For the reasons stated below, the plaintiff's Motion to Compel (Doc. No. 107) is GRANTED in part and DENIED in part.

---

[1] The plaintiff requested and was granted multiple extensions of time to file his reply brief due to restrictions resulting from the COVID-19 pandemic.

## II.   MOTION TO COMPEL

### A.   LEGAL STANDARD

Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). The proportionality determination limits the scope of discovery by "considering the importance of the issues at stake[,]" the "amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense . . . outweighs the likely benefit" of the discovery sought. FED. R. CIV. P. 26(b)(1).

### B.   DISCUSSION

#### 1.   DOCUMENT REQUESTS

##### a.   DOCUMENT REQUEST NO. 3

In Document Request No. 3, the plaintiff seeks: "[a]ny and all Plaintiff specific D.O.C. mental health medical records dated from 3-25-14 through 6-13-17." (Pl. Mem. at 10). In their opposition, the defendants represented that they provided to the plaintiff the "entirety of Plaintiff's DOC medical record from January of 2014 until March of 2020." (Def. Mem. at 3).[2] Accordingly, the plaintiff's motion as to this Document Request is DENIED as moot.

##### b.   DOCUMENT REQUEST NOS. 5, 9, 11, 20, 26

Document Request Nos. 5, 9, 11, 20, and 26 are somewhat duplicative, so the Court will consider them together. Document Request Nos. 5, 9 and 11 seek documents relating to prior

---

[2] The plaintiff argues that the fact that the defendants produced more records than he requested constitutes an invasion of privacy which "can possibly prejudice the plaintiff during an event of a jury trial or summary judgment." (Doc. No. 126 at 3). The plaintiff requests that defense counsel be removed from this case and sanctioned by the Court. (*Id.*). The Court directs defense counsel to confer with the plaintiff regarding the breadth of the documents produced and the use of such documents in this case and notes that the documents were only produced to the plaintiff; thus, the plaintiff's privacy interests are not implicated.

lawsuits brought against Officer Moriarty for sexual misconduct and retaliation, and internal investigations conducted into Officer Moriarty for sexual misconduct and retaliation.[3] Document Request Nos. 20 and 26 seek documents relating to prior lawsuits and internal investigations brought against "all defendants" for retaliation, as well as documents showing each defendant's disciplinary history relating to sexual misconduct or retaliation.[4]

In response, the defendants argued to the plaintiff that the requests 1) were improperly directed to all defendants; 2) were irrelevant to the plaintiff's claims as they seek information related to unverified allegations; 3) were posed solely to annoy, harass, embarrass, oppress or to impose an undue burden or expense; 4) constituted an unnecessary and unwarranted invasion of privacy; and 5) were overly broad and not proportional to the case. (Pl. Mem. at 14, 16, 17, 22, 24-25). In the instant motion, the plaintiff argues in only one sentence as to each request that these documents are relevant, without further explanation. Similarly, while the defendants objected to these requests when they were made, they do not now specifically address these document requests in their opposition brief.

---

[3] The plaintiff alleges that Correction Officer Moriarty "forced him to masturbate in front of her on several different occasions and that when [the] plaintiff refused to continue to do so, she gave [him] a false disciplinary ticket for public indecency for masturbating in public." (Doc. No. 107 at 1; *see also* Doc. No. 126 at 1-2). After a PREA investigation, the plaintiff's claim was "determined to be unfounded[.]" (Doc. No. 1 at 28) (emphasis omitted). In Document Request No. 5, the plaintiff seeks "[a]ny and all Defendant Moriarty named lawsuits filed against her and D.O.C. investigation reports, regarding contraband, sexual misconduct, sexual harassment, sexual assault, retaliation, threatening, or anything sexual or pornographic, or having a relationship with an inmate." (Pl. Mem. at 10). Document Request No. 9 seeks "[a]ny and all defendant Moriarty criminal investigation reports filed against her while ever working for D.O.C., pertaining to sexual misconduct or sexual harassment, sexual assault, retaliation, contraband, threatening, or anything sexual, pornographic, having a relationship with an inmate." (*Id.* at 11). Document Request No. 11 seeks "[a]ny and all PREA investigations filed by other inmates against Officer Moriarty while ever working for D.O.C." (*Id.*).

[4] Document Request No. 20 seeks "[a]ny and all legal documentation pertaining to all defendants['] reprimands while ever working for D.O.C., regarding anything sexual, pornographic, retaliation, threatening, contraband." (Pl. Mem. at 11). Document Request No. 26 asks for "[a]ny and all defendants named lawsuits against them and D.O.C. investigation reports regarding retaliation." (*Id.*).

At the outset, lawsuits are matters of public record and are equally accessible to the plaintiff without the defendants' assistance. *See Robinson v. Adams*, No. 08-CV-1380 (SMS), 2011 WL 2118753, at \*17 (E.D. Cal. May 27, 2011) (denying *pro se* incarcerated plaintiff's motion to compel complaints and case numbers of lawsuits filed against defendants for the same conduct because such documents "are public records and equally accessible to him"). The plaintiff has not provided "any persuasive argument to shift the cost and burden of retrieving court documents to the defendants." *See id*. Accordingly, the plaintiff's motion for discovery as to prior lawsuits is DENIED.

The remainder of the documents requested in 20 and 26, however, appear to be internal documents within the defendants' control. Documents from internal investigations conducted into Officer Moriarty for sexual misconduct and retaliation, documents from internal investigations brought against the other named defendants for retaliation, and documents showing each defendant's disciplinary history relating to retaliation, are all relevant to the plaintiff's claims. This information would presumably be in each defendant's personnel file.

Section 31-128f of the Connecticut General Statutes recognizes a privacy interest in personnel files, providing, in pertinent part: "No individually identifiable information contained in the personnel file [] of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer . . . except . . . pursuant to a lawfully issued administrative summons or judicial order . . . ." *Id*. Thus, "courts may order the disclosure of employee documents that are relevant to a particular case as part of discovery." *Metcalf v. Yale University*, No. 15-CV-1696, 2017 WL 627423, at \*5 (D. Conn. Feb. 15, 2017) (citing *Ruran v. Beth El Temple of West Hartford, Inc.*, 226 F.R.D. 165, 169 (D. Conn. 2005)); *see also Gibbs v. Am. Sch. for the Deaf*, No. 05-CV-563 (MRK), 2007 WL 1079992, at \*1 (D. Conn. Apr. 4, 2007)

(holding that "Judges in this District have repeatedly recognized that when personnel information . . . is necessary and relevant to a case, a court may order limited disclosure of that information consistent with the dictates of § 31-128f.").

Here, the plaintiff may be entitled to production of these documents, to the extent that they include specific information related to the plaintiff's asserted claims. The Court, however, is cognizant of the privacy interests involved, and the breadth of these requests as the plaintiff does not limit his request to a certain timeframe. The personnel files may also include private and personal information that is not necessary or relevant to this litigation. Accordingly, by September 8, 2020, the defendants are directed to submit to the Court for an *in camera* review responsive documents within the defendant's personnel files, if any, as well as any other documents within the reflecting internal investigations or disciplinary records of Officer Moriarty for sexual misconduct or retaliation, and of the remaining named defendants for retaliation, if any, within the three-year period from January 2014 to January 2017. The defendants are also directed to submit proposed redactions for the documents submitted for *in camera* review. If there are no responsive documents, the defendants shall serve a supplemental response indicating that no responsive documents exist.

### c.      DOCUMENT REQUEST NO. 6

In Document Request No. 6, the plaintiff asks for "the surveillance footage on the 1/10/14 1st shift of Officer Moriarty conducting sexual misconduct at q-3 stationary desk with C/O Kibble." (Pl. Mem. at 10). In response, the defendants represent that "there is no 'surveillance footage' of Officer Moriarty 'conducting sexual misconduct.'" (Pl. Mem. at 14). To the extent there is any footage from the first shift on 1/10/14 at the stationary desk involving Officer Moriarty and Officer Kibble, the defendants shall produce that footage by September 8, 2020.

d.   DOCUMENT REQUEST NOS. 7, 8, 27

Document Request No. 7 asks for "[a]ny and all defendant Moriarty outside clinical medical records of mental health diagnosis and psychiatric or psychotherapy doctor notes and medications prescribed and treatments while ever working for D.O.C." (Pl. Mem. at 10; *see* Doc. No. 126 at 6-8). Document Request No. 8 requests "[a]ny and all defendant Moriarty outside clinical substance abuse/alcohol/drug records and rehabilitation and treatment records while ever working for D.O.C." (Pl. Mem. at 10). Document Request No. 27 seeks "[a]ny and all defendant Moriarty mental health psychiatric evaluation medical records or test and results from DOC." (*Id.*).

In response to the plaintiff's document requests, the defendants objected, arguing that the requests 1) improperly purported to serve a production request to all defendants; 2) were irrelevant to the plaintiff's claims; 3) were not reasonably calculated to lead to the discovery of admissible evidence; 4) were posed solely to annoy, harass, embarrass, oppress or to impose an undue burden or expense; 5) constituted an unnecessary and unwarranted invasion of privacy; and 6) were overly broad and not proportional to the needs of the case. (*Id.* at 15-16). In their opposition brief, the defendants now argue that "whether . . . Officer Moriarty has ever even been treated for any mental health issues or substance abuse issues has absolutely no 'tendency to make a fact [of consequence] more or less probable than it would be without the evidence.'" (Def. Mem. at 7). Further, the defendants argue that "production of these records would be an incredible invasion of privacy." (*Id.*).

The Court agrees with the defendants. At the outset, the plaintiff has not shown that these records in fact exist. Moreover, even assuming such records exist, the plaintiff has not shown that they would be relevant to the present action. Nor has he addressed the defendants' objections. Finally, such records (if they exist) would involve intensely private confidential information. *See*

*Ellis v. Hobbs Police Dep't*, No. CV 17-1011 WJ/GBW, 2019 WL 5697787, at *4 (D.N.M. Nov. 4, 2019) ("The Court's evaluation of relevance and proportionality must be particularly stringent where personal, confidential information is involved."). Thus, the plaintiff's motion as to these requests is DENIED.

e.    <u>DOCUMENT REQUEST NO. 10</u>

Document Request No. 10 seeks "[a]ny and all defendant C/O Moriarty sexual disciplinary reports she issued any inmate while ever working for the D.O.C. including written statements and interviews." (Pl. Mem. at 11). In response, the defendants advised the plaintiff that they objected on the grounds that the request 1) improperly purported to serve a production request to all defendants; 2) was irrelevant to the plaintiff's claims; 3) was posed solely to annoy, harass, embarrass, oppress or to impose an undue burden or expense; 4) constituted an unnecessary and unwarranted invasion of privacy; and 5) was overly broad. (*Id.* at 16-17).

The Court agrees with the defendants. This document request is overly broad in that it does not specify a time period, and it also implicates privacy interests of third parties. To the extent that the plaintiff seeks information regarding defendant Moriarty's involvement in previous sexual harassment complaints, this discovery is addressed in the plaintiff's document requests 5, 9 and 11, as discussed above. Accordingly, the plaintiff's motion as to Document Request No. 10 is DENIED.

f.    <u>DOCUMENT REQUEST NO. 12</u>

Document Request No. 12 seeks "[a]ny and all CT state police reports and statements regarding alleged sexual harassment against C/O Moriarty, pertaining to PREA case 14-039." (Pl. Mem. at 11). In response, the defendants indicated that "[n]otwithstanding [their] objections, documents responsive to this request are contained with Bates #D001 – D071." (*Id.* at 17-18). In

7

his motion, the plaintiff does not claim that this response was deficient, nor does his reply brief address this request.  (Doc. No. 126 at 9).  Accordingly, the plaintiff's motion as to this Document Request is DENIED as moot.

g.     DOCUMENT REQUEST NOS. 13 AND 25

Document Request No. 13 asks for "[a]ny and all written policies and procedures and administrative directives regarding NICE camera Vision at Osborn CI." (Pl. Mem. at 11). Similarly, Document Request No. 25 seeks "the policies and procedures of NICE camera vision of Osborn C.I." (*Id.*).  In response to Document Request No. 13, the defendants indicated that "[n]otwithstanding [their] objections, see Bates #A015 – A021." (*Id.* at 18). In his reply brief, the plaintiff claims that this response was deficient in that none of the documents "give information inside these policy and procedures relating to NICE camera vision regarding the system erase at 30 days." (Doc. No. 126 at 9).  In their response to Document Request No. 25, the defendants represent that "there [are] no 'policy and procedures' regarding NICE camera vision specific to Osborn Correctional Institution." (Pl. Mem. at 24). Although the plaintiff claims that the defendants' response to Document Request No. 13 did not address the policies and procedures regarding the "NICE Camera Vision at Osborn CI," the defendants' response to Document Request 25 specifically states that there were no policies and procedures related to the camera. Thus, the plaintiff's motion as to Document Requests 13 and 25 is DENIED.

h.     DOCUMENT REQUEST NO. 14

This request asks for "[a]ny and all legal documentation and criminal reports or investigations pertaining to Defendant Moriarty while ever working for D.O.C., Defendant Moriarty ever pressing charges with CT state police against any inmate for anything sexual." (Pl. Mem. at 11). In response, the defendants advised the plaintiff that they objected on the grounds

that the request 1) improperly purported to serve a production request to all defendants; 2) was irrelevant to the plaintiff's claims; 3) was posed solely to annoy, harass, embarrass, oppress or to impose an undue burden or expense; 4) constituted an unnecessary and unwarranted invasion of privacy; 5) was overly broad; and 6) sought documents not in possession of any defendants in this case. (*Id.* at 18-19).

This request seeks criminal reports or investigations into Defendant Moriarty's conduct and records of complaints made by Defendant Moriarty to law enforcement. Both requests appear to seek documentation typically held by law enforcement, not the defendants in this case. Though the plaintiff argues that Defendant Moriarty can obtain this information in "her personal file with the Department of Corrections" (Pl. Mem. at 4), that does not appear to be the case. Indeed, the defendants objected to the request on the ground that it seeks documents not in the possession of any defendants. (*Id.* at 18-19). In light of the defendants' representation that these documents are not in their possession, and because the Court has ordered *in camera* review of defendant Moriarty's personnel file, the Court DENIES the plaintiff's motion to compel as to this document request.

i.    DOCUMENT REQUEST NO. 15

Document Request No. 15 asks for "[a]ny and all legal documentation pertaining to defendant Moriarty. If she ever had any inmate sexual score raised or had any inmate sent to Northern C.I., through disciplinary action or criminal charges." (Pl. Mem. at 11).

In response, the defendants argued to the plaintiff that the request was not for the production of documents, but rather was an interrogatory which was in excess of the allowed number of interrogatories. (*Id.* at 19). They also objected on the grounds that the request 1) improperly purported to serve a production request to all defendants; 2) was irrelevant to the

plaintiff's claims; 3) was posed solely to annoy, harass, embarrass, oppress or to impose an undue burden or expense; 4) constituted an unnecessary and unwarranted invasion of privacy; 5) was overly broad; and 6) sought documents not in possession of any defendants in this case. (*Id.*).

The request as to "any and all legal documentation pertaining to defendant Moriarty" is overly broad. It is only through the second sentence referencing whether "she ever had any inmate sexual score raised or had any inmate sent to Northern C.I., through disciplinary action or criminal charges" that the defendants could be expected to know what the plaintiff was seeking.

The plaintiff asserts that defendant Moriarty provided a statement to the PREA Unit that the plaintiff "got caught, now his score is going to go up." (Doc. No. 126 at 10). The plaintiff has not alleged that his score, if fact, went up. This broad request does not specify a time period and may implicate the privacy interests of third parties, and the plaintiff has not established the relevance of this request so as to overcome the counterbalancing privacy interests at stake. Accordingly, the plaintiff's motion as to Document Request No. 15 is DENIED.

j.    DOCUMENT REQUEST NO. 17

In this request, the plaintiff seeks "[a]ny and all legal documentation of owned properties, assets, businesses, boats, vehicles, and joined bank accounts by defendants." (Pl. Mem. at 11). The plaintiff argues that he is entitled to "know what assets the defendants owned" and "to place a lien against . . . any defendant." (*Id.*).  The defendants object on the grounds that the request 1) improperly purports to serve a production request to all defendants; 2) is irrelevant to the plaintiff's claims; 3) was posed solely to annoy, harass, embarrass, oppress or to impose an undue burden or expense; 4) constitutes an unnecessary and unwarranted invasion of privacy; 5) is overly broad and could potentially jeopardize safety and security. (*Id.* at 20). The Court agrees with the defendants that the requested information is not relevant to the plaintiff's 42 U.S.C. § 1983 claim,

and that the request is deficient in that it is not directed to a specific defendant. The plaintiff's motion as to this Request is DENIED.

k.      DOCUMENT REQUEST NO. 18

Document Request No. 18 seeks "[a]ny and all legal documentation of defendant C/P Moriarty two-weeks-notice to Watkinson halfway house in 1999 when quitting job or her resignation or termination papers and or reason for getting fired or dismissed." (Pl. Mem. at 11). In response, the defendants represented that no such documents exist. (*Id.* at 21). In light of the defendants' representation, the plaintiff's motion to compel as to this Document Request is DENIED.

l.      DOCUMENT REQUEST NO. 21

This request seeks "[a]ny and all names of witnesses who will be testifying at trial and expert witness, doctors or medical staff or any person who has personal knowledge to PREA case 14-039." (Pl. Mem. at 11). The defendants objected to this request, arguing that it is premature because discovery has not yet closed. (*Id.* at 22). The defendants represented that they will supplement this response as the case progresses (*id.*), and the plaintiff does not address this request in his reply. (Doc. No. 126 at 11). Discovery is set to close in this case on September 8, 2020. To the extent that the defendants have not provided a response to this request, either through an interrogatory or through this request, defendants shall serve its response by September 8, 2020. Accordingly, the plaintiff's motion as to this Request is GRANTED.

m.      DOCUMENT REQUEST NO. 24

In this request, the plaintiff seeks "[a]ny and all correspondence between [Connecticut State Police] and the DOC PREA unit regarding PREA case 14-039." (Pl. Mem. at 11). The defendants objected on the grounds that the request 1) purports to serve a production request to all

defendants; 2) is "overly broad and therefore not proportional to the needs of the case in that it does not articulate a timeline"; and 3) is "vague and ambiguous in that it does [not] define what is meant by 'correspondence.'" (*Id.* at 24).

This request is relevant to the action. PREA Case 14-039 was an investigation conducted by the PREA Unit into the plaintiff's allegations of sexual assault against Officer Moriarty. (Doc. No. 1 at 28-29). To the extent such correspondence exists, it is relevant to the plaintiff's claim. Moreover, because it relates to a discrete investigation, the absence of a specified timeline does not render the request overly broad. Nor does the Court agree that the word "correspondence" is vague. Accordingly, the plaintiff's motion as to this request is GRANTED.

## 2.   INTERROGATORY RESPONSES

The plaintiff argues that the defendants "did [not] answer particular questions" in his First Set of Interrogatories, dated October 1, 2019. (Pl. Mem. at 7). On November 22, 2019, the plaintiff spoke with Assistant Attorney General Belforti about the interrogatory responses, and Attorney Belforti advised the plaintiff that "some of the interrogatory questions were overly broad and concern privacy issues." (*Id.*). Therefore, on December 13, 2019, the plaintiff sent the defendants "additional amended first set of interrogatory questions." (*Id.*). According to the plaintiff, the defendants, in their February 21, 2020 responses, "only answered selective . . . interrogatory questions." (*Id.*). The plaintiff seeks an order compelling the defendants to answer all of the December 13, 2019 interrogatories. (*Id.*).

The defendants argue that the plaintiff "is seeking different answers from what he received because he is dissatisfied with the [defendants'] answers." (Def. Mem. at 8). The defendants represent that they have responded to 173 interrogatories. (*Id.* at 3).

The plaintiff's motion includes as an exhibit his First Set of Interrogatories, dated October 1, 2019 ("First Set of Interrogatories"), which included 129 interrogatories addressed to Wendy Moriarty, Luis Colon, Jose Torres, Mark Gargiulo, Jeanette Maldonado, and David McNeil. (Pl. Mem. at 32-43). He also provides a document entitled First Set of Interrogatories but dated December 15, 2019 ("Second Set of Interrogatories"). (*Id.* at 45-52). This document reiterates certain interrogatories from the plaintiff's First Set of Interrogatories but directs the questions to specific defendants. The plaintiff's Second Set of Interrogatories includes interrogatories 14, 15, 23, and 25, directed to Luis Colon, interrogatories 2, 5, 6, 7, 8, 11, 18, 19, 24, and 25, directed to Officer Moriarty, interrogatories 2, 3, 10, 15, 16, 17, and 18, directed to Jose Torres, interrogatories 8, 16, 18, 19, 20, 21, 22, 23, 24, and 25, directed to Mark Gargullo, interrogatories 7, 8, 10, 22, 23, 24, and 25, directed to David McNeil, and interrogatories 9, 11, 13, 23, 24, and 25, directed to Jeanette Maldonado. (*Id.* at 46-52).

The plaintiff provides the Court with Luis Colon's responses (*id.* at 53-56), Officer Moriarty's responses, (*id.* at 57-62), Jose Torres's responses (*id.* at 63-67), Mark Gargullo's responses (*id.* at 68-71), David McNeil's responses (*id.* at 73-77), and Jeanette Maldonado's responses. (*Id.* at 78-83).

Besides arguing that the defendants "did[] n[o]t comply with discovery and did[] n[o]t answer particular questions," the plaintiff does not specifically address any interrogatory in his motion. (Pl. Mem. at 6-7). Instead, the plaintiff asks the Court to compel the defendants to answer all the interrogatories, notwithstanding their objections. (*Id.* 7). The party seeking to compel discovery bears the burden of showing the "possibility of relevance sufficient to warrant discovery." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *2 (S.D.N.Y. Nov. 16, 2016). Yet here, the plaintiff has not specifically addressed any

interrogatory or the defendants' objections to any particular interrogatory. In his reply, the plaintiff requests permission to serve another set of interrogatories to defendant Moriarty, and the plaintiff states that he "refiled request for production" on August 12, 2020. (Doc. No. 126 at 13). The discovery deadline was extended to September 8, 2020. To the extent that there are outstanding interrogatories to which the defendants have yet to respond, they shall do so by September 8, 2020. The plaintiff's motion to compel further responses to his Second Set of Interrogatories, however, is DENIED.

### 3.   REQUESTS FOR ADMISSIONS

The plaintiff argues that the defendants failed to answer his Requests for Admissions. The plaintiff states that Attorney Belforti told him that his "admission questions were not written in the proper format or proper manner to be answered." (Pl. Mem. at 7). Attorney Belforti allegedly told the plaintiff that he would need permission from the court before he could resubmit his Requests for Admission to the defendants. (*Id.*). The plaintiff's motion includes his "Request for Admission" dated October 1, 2019. (Pl. Mem. at 85-92).

In their opposition, the defendants represent that they "did respond to several," but also that they "filed objections as to the form of many [of] [the] requests [because they] were not properly 'framed so that they [could] be answered with a simple admission or denial without explanation.'" (Doc. No. 115 at 8). Additionally, the defendants argue that the plaintiff was improperly using requests for admission as additional interrogatories as to which the defendants had not consented. (*Id.* at 9).

"While discovery mechanisms such as requests for document production, interrogatories, and depositions typically seek to uncover information for use in pursuing or defending against a litigated claim, requests for admissions serve the distinctly different purpose of assisting the parties

and the court to narrow the factual issues to be presented for determination in connection with such a claim, either on motion or at trial." *Boudreau v. Smith*, No. 17-CV-589 (SRU) 2019 WL 3973997, at *1 (D. Conn. Aug. 22, 2019) (quoting *Brodeur v. McNamee*, 2005 WL 1774033, at *2 (N.D.N.Y. July 27, 2005). The party requesting the admission "bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without explanation." *Id.* (quoting *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003). Federal Rule of Civil Procedure 36(a)(6) then allows a party to move for a determination of the sufficiency of the answer or objection to a request.

Here, the plaintiff has not provided the defendants' responses to the plaintiff's October 1, 2019 Request for Admissions. Without the defendants' responses, the Court is unable to evaluate the sufficiency of the defendants' answers and objections. Further, the plaintiff has not addressed any specific request for admission. Absent these responses, and a more particularized showing by the plaintiff as to why the defendants' responses are insufficient, the Court will not review and evaluate all of the plaintiff's sixty-five Requests for Admissions. In his reply brief, the plaintiff seeks to serve additional requests for admission. This case has been pending for nearly four years during which the plaintiff has conducted extensive discovery. The plaintiff's motion to compel further responses either to previously submitted requests for admissions or to additional requests for admissions is DENIED.

## III. CONCLUSION

Accordingly, this Court concludes that the plaintiff's Motion to Compel (Doc. No. 107) is GRANTED in part and DENIED in part.

The plaintiff's motion to compel responses is DENIED as to documents requests 5, 7, 8, 9, 10, 11, 13, 14, 15, 17, 18, 25 and 27; DENIED as moot as to document requests 3 and 12;

GRANTED as to document requests 6, 21 and 24; and DENIED as to the plaintiff's Interrogatories and Requests for Admission.  As to document requests 20 and 26, on or before September 4, 2020, the defendants are directed to submit for *in camera* review responsive documents within the defendant's personnel files, if any, as well as any other documents within the reflecting internal investigations or disciplinary records of Officer Moriarty for sexual misconduct or retaliation, and of the remaining named defendants for retaliation, if any, within the three-year period from January 2014 to January 2017.  The defendants are also directed to submit any proposed redactions for the documents submitted for *in camera* review with the September 8, 2020 submission. If there are no responsive documents, the defendants shall serve a supplemental response by September 8, 2020 indicating that no responsive documents exist.

   This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); and D. CONN. L. CIV. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

   Dated at New Haven, Connecticut, this 26th day of August, 2020.

        __/s/ Robert M. Spector_____
        Robert M. Spector
        United States Magistrate Judge