## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANTUAN WHITE,
    *Plaintiff*,

    v.                      No. 3:16-cv-01874 (JAM)

JOHN DOE *et al.,*
    *Defendants*.

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This is a "he said, she said" case involving a male prisoner and a female prison guard. The prisoner is Antuan White, and the guard is Officer Wendy Moriarty.

White says that Officer Moriarty twice forced him to masturbate in front of her under threat that she would have him transferred to a supermax facility. Officer Moriarty denies it. She says that White made up this story after she ticketed him one day for public indecency.

Four other prison officials took part in an investigation of the conflicting claims. They ended up crediting Officer Moriarty's account, leading to White being disciplined for making a false report.

White has filed this federal lawsuit against Officer Moriarty and the other four prison officials. The defendants have moved for partial summary judgment. Officer Moriarty seeks judgment on White's claims that she violated his rights under the Fourth and the Eighth Amendments by repeatedly forcing him to masturbate in front of her. The four other prison officials seek summary judgment on White's claim that they engaged in unlawful retaliation in violation of White's First Amendment right to complain about what Officer Moriarty allegedly did.

1

I will grant in part and deny in part the defendants' motion for summary judgment. As to White's claim for an invasion of his right to bodily privacy under the Fourth Amendment, I conclude that there is a genuine issue of fact to support the claim and that qualified immunity does not bar this claim on the present factual record. As to White's claim for cruel and unusual punishment under the Eighth Amendment, I conclude that a genuine issue of fact supports the claim but that it is barred by the doctrine of qualified immunity. As to White's claim for First Amendment retaliation, I conclude that White has failed to show a genuine issue of fact that the four defendants acted with retaliatory intent to penalize White for his complaint about Officer Moriarty.

## BACKGROUND

The following facts are set forth in the light most favorable to White as the party who is opposing the defendants' motion for summary judgment. I note that both White and Officer Moriarty accuse each other of serious sexual misconduct, and any reader of this ruling should understand that these are allegations only and have yet to be proven at trial.

White was serving a prison sentence in 2014 at the Osborn Correctional Institution in Connecticut. On January 10, 2014, he saw a correctional officer massaging Correctional Officer Wendy Moriarty's shoulders.[1] Later that day, White told Officer Moriarty that he would file a complaint about her sexual misconduct.[2] Officer Moriarty responded that there "would be consequences for being in her business."[3]

---

[1] Doc. #164-1 at 12 (¶ 1).

[2] *Ibid.* (¶ 3).

[3] *Ibid.*

On a weekend in late January 2014, White was alone in his cell when Officer Moriarty came to his cell.[4] She asked White if he had ever been to Northern Correctional Institution ("Northern"), and he said no, because it is a Level 5 facility for violent offenders.[5] I take judicial notice that, until its recent closure, Northern operated for many years as a "supermax" facility with highly restrictive and secure conditions of confinement.

Officer Moriarty told White that "if you don't want to go to Northern then I want you to do what I tell you to do."[6] She said she wanted him to masturbate for her "on my next tour when I come around."[7] When White told her he did not want to do that, she responded that "just like I told you, if you don't do it you're going to go to Northern for disciplinary action."[8]

According to White, Officer Moriarty "forced" him to "take [his] hand and put it on [his] penis and move it up and down," because "she wanted to see me masturbate" and "[t]hat's what she said she wanted me to do."[9] Officer Moriarty allegedly stood at the door of White's cell and watched while White massaged his penis with his hand for about ten minutes until he ejaculated.[10]

Officer Moriarty next spoke to White on February 11, 2014.[11] On that day, Officer Moriarty again ordered White while in his cell alone to masturbate, and he did so.[12] Although

---

[4] Doc. #163-3 at 61.

[5] Doc. #164-1 at 12 (¶ 4); Doc. #163-3 at 64.

[6] Doc. #163-3 at 66.

[7] *Id.* at 67.

[8] *Ibid.*

[9] *Id.* at 80-81.

[10] *Id.* at 83; Doc. #164-1 at 1 (¶ 3).

[11] Doc. #164-1 at 2 (¶ 6).

[12] *Id.* at 2 (¶ 7).

Moriarty ordered White to masturbate and watched him do so on these two occasions, she did not touch him during these incidents.[13]

On February 17, 2014, Officer Moriarty saw White in the unit and ordered him to masturbate later that day at 1:30 pm.[14] When White refused, Officer Moriarty repeated her threat to send him to Northern.[15]

Around 1:30 pm, Officer Moriarty came to White's cell and asked him why he was not masturbating.[16] When White told her that he would not masturbate for her anymore, Officer Moriarty became upset, slammed White's cell door, and walked away.[17]

On the same day, Officer Moriarty issued to White a Class A ticket for public indecency.[18] According to Officer Moriarty, she issued the ticket because she found White in his cell stroking his erect penis.[19] By contrast, White alleges that Officer Moriarty wrote him up because he refused to masturbate and that she fabricated her claim of White engaging in public indecency.[20]

In March 2014, White told Captain Colon about Officer Moriarty's threats to send him to Northern if he did not masturbate.[21] Captain Colon interviewed White and White's cellmate

---

[13] *Id.* at 1 (¶ 4), 2 (¶ 8).

[14] *Ibid.* (¶ 11).

[15] *Ibid.*

[16] *Id.* at 3 (¶¶ 13-14).

[17] *Ibid.* (¶ 14).

[18] *Id.* at 5 (¶ 22).

[19] *Id.* at 3-5 (¶¶ 19-21).

[20] *Id.* at 5 (¶ 21).

[21] *Id.* (¶ 23a).

about the incidents, and then issued White a disciplinary ticket for false reporting, citing alleged "inconsistencies" in White's account.[22]

Lieutenant Torres "signed off" on Captain Colon's disciplinary ticket for false reporting without speaking to White or observing any interaction between White and Officer Moriarty.[23] According to White, Lieutenant Torres did not conduct a thorough investigation into the disciplinary ticket for White's allegedly false report.[24]

The ticket issued by Captain Colon and authorized by Lieutenant Torres was dismissed a few days later, and White did not receive sanctions for this ticket or the alleged false reporting at that time.[25] But David McNeil, who was Director of the Prison Rape Elimination Act ("PREA") Unit, ordered Captain Maldonado to investigate whether Officer Moriarty had sexually abused White.[26]

Captain Maldonado reviewed the incident report of White's allegations, the February 17 ticket for public indecency, and a report of Captain Colon's interview of another inmate.[27] Captain Maldonado interviewed White, Officer Moriarty, and another inmate.[28] Two inmates declined interviews.[29] None of the other inmates gave information to Captain Maldonado to corroborate White's claim against Officer Moriarty.[30]

---

[22] *Id.* at 6 (¶¶ 24-25), 8 (¶ 36).

[23] *Id.* at 6-7 (¶¶ 26, 28).

[24] *Id.* at 7 (¶ 31a).

[25] *Id.* at 8 (¶ 32, 34).

[26] *Ibid.* (¶¶ 32-35).

[27] *Ibid.* (¶ 36).

[28] *Id.* at 9 (¶ 37).

[29] *Ibid.* (¶ 38).

[30] *Ibid.* (¶ 39).

Captain Maldonado concluded that White's claims against Officer Moriarty were unfounded and recommended that White receive a disciplinary ticket for false reporting.[31] Director McNeil in turn authorized a disciplinary ticket against White for false reporting. He did so without meeting with White or witnessing any of White's interactions with Officer Moriarty or Captain Colon.[32] White was subsequently found guilty of false reporting at a disciplinary hearing on September 2, 2014.[33]

As a result of the disciplinary ticket, White was placed in segregated housing.[34] While White was in segregated housing, Captain Gargullo allegedly subjected him to cruel and unusual conditions of confinement.[35]

White filed this action in 2016 against nineteen employees of the Connecticut Department of Correction, alleging that they violated his constitutional rights.[36] After conducting an initial review of the complaint, I allowed White's Eighth Amendment claims to proceed against two named defendants (Officer Moriarty and Captain Gargullo) and his First Amendment claims for free-speech retaliation to proceed against several more defendants (Officer Moriarty, Captain Colon, Lieutenant Torres, Director McNeil, and Lieutenant Maldonado).[37]

---

[31] *Ibid.* (¶ 40).

[32] *Id.* at 9-10 (¶¶ 41, 44, 46-47).

[33] *Id.* at 10 (¶¶ 42-43).

[34] *Id.* at 15 (¶ 24).

[35] *Id.* at 15-16 (¶¶ 27-32); Doc. #12 at 6-7.

[36] Doc. #1

[37] Doc. #21; *White v. Doe et. al*, 2017 WL 2562845 (D. Conn. 2017). I also allowed a First Amendment claim to proceed against one other defendant (Warden Maldonado) but this was later dismissed on qualified immunity grounds. Doc. #32. In addition, White alleges an Eighth Amendment claim against Captain Gargullo arising from the conditions of his confinement while he was in segregated housing. Because Captain Gargullo has not moved for summary judgment, it is unnecessary to address this claim here.

With the exception of Captain Gargullo, the remaining defendants have now moved for partial summary judgment.[38] They seek dismissal of all of White's claims except for his Eighth Amendment claim against Captain Gargullo and his First Amendment claim against Officer Moriarty.

During oral argument on the motion for summary judgment, I acknowledged that White's briefing sought relief in part under the Fourth Amendment and advised counsel that my initial review order had failed to address the Fourth Amendment claim that White alleged in his complaint. *See White v. Doe*, 2017 WL 2562845 (D. Conn. 2017). I told counsel that I believed that White should be entitled to receive consideration of the claim, especially in light of the fact that the claim is based on the same facts as the Eighth Amendment claim. Following oral argument, I entered an order amending my initial review order to state in relevant part:

> The Court's re-review of the complaint discloses that it also expressly alleged a Fourth Amendment claim "to bodily privacy, by [Moriarty's] demanding plaintiff to strip naked and expose his genitals and perform sexual acts 'masturbation' for defendant viewing and personal self gratification." Doc. # 1 at 14 (par. 36). The Court concludes that it was error for the initial review order not to acknowledge or address the Fourth Amendment claim and that the interests of justice warrant allowing it to proceed without prejudice to defendant Moriarty's seeking its dismissal. Even at this late stage of the litigation, the Court concludes that defendant Moriarty will not be unfairly prejudiced by having to respond to the Fourth Amendment claim in light of its substantial evidentiary and legal overlap with the Eighth Amendment claim.[39]

In addition, I entered a docket order stating in part that the parties should file supplemental briefing addressing "whether summary judgment should be granted as to plaintiff's Fourth Amendment claim against defendant Moriarty."[40] The parties filed supplemental briefing.[41]

---

[38] Doc. #163.

[39] Doc. #169.

[40] Doc. #170.

[41] Docs. #172-175.

This ruling addresses Officer Moriarty's motion for summary judgment as to White's claims under the Fourth and Eighth Amendments. It further addresses the motion of defendants Captain Colon, Lieutenant Torres, Lieutenant Maldonado, and Director McNeil for summary judgment as to White's claim against them for retaliation in violation of the First Amendment.

**DISCUSSION**

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve closely contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).[42]

***Fourth Amendment***

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In the prison context, it has long been recognized that the Fourth Amendment protects at least a limited right to bodily privacy. *See Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (*per curiam*) (citing *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992)).

---

[42] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

This right to bodily privacy extends to protection against prison guards who gratuitously seek to view the most intimate parts of a prisoner's body. One federal appeals court has well-explained why prisoners should retain a limited right to bodily privacy:

> Persons in prison must surrender many rights of privacy which most people may claim in their private homes. Much of the life in prison is communal, and many prisoners must be housed in cells with openings through which they may be seen by guards. Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons.

*Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981).

The Second Circuit has articulated a two-part test to determine whether a correctional officer has violated a prisoner's right to personal bodily privacy. "First, the court must determine whether the inmate has exhibited an actual, subjective expectation of bodily privacy; and [] second, the court must determine whether the prison officials had sufficient justification to intrude on the inmate's fourth amendment rights." *Harris*, 818 F.3d at 57. Although the Second Circuit in *Harris* articulated the standard by reference only to whether the prisoner exhibited an actual subjective expectation of privacy, I assume that the standard further requires that the subjective expectation is one that society is prepared to accept as reasonable. *See Covino*, 967 F.2d at 77 (appropriate inquiry is whether the prisoner "has exhibited a subjective expectation of privacy and whether society is prepared to recognize that expectation of privacy as reasonable").

Applying this standard here and crediting White's version of the facts, there is at least a genuine fact issue about whether Officer Moriarty violated White's Fourth Amendment right to bodily privacy. White asserted a reasonable expectation of privacy in not exposing his genitals to Officer Moriarty and in not engaging in sexual activity in front of her, and Officer Moriarty had no lawful or legitimate justification to compel White to masturbate for her viewing satisfaction.

Accordingly, viewing the facts in the light most favorable to White, I conclude that there is a genuine issue of fact for trial about whether Officer Moriarty violated White's right to bodily privacy under the Fourth Amendment.

### Qualified Immunity - Fourth Amendment

The next question is whether Officer Moriarty should be entitled to qualified immunity from White's claim under the Fourth Amendment. The Second Circuit has recently reviewed and explained the oft-stated principles of qualified immunity. *See Horn v. Stephenson*, -- F. 4th --, 2021 WL 3776318, *3 (2d Cir. 2021).

The doctrine of qualified immunity protects a government officer from liability for money damages stemming from a violation of the Constitution if the officer engaged in conduct that an objectively reasonable officer would not necessarily have known at the time amounted to a violation of the plaintiff's constitutional rights. *Ibid.* Thus, in order for a plaintiff to overcome a defense of qualified immunity, the plaintiff must show that the defendant violated a right of the plaintiff that was clearly established law at the time of the conduct in question. *Ibid.*

Because it is sometimes difficult for an officer to understand how legal doctrine may apply to particular facts, a court must identify the right at issue with an appropriate level of specificity that is particularized to the facts of the case. *Ibid.* This is not to say that there must be a prior case involving identical facts or that is directly on point, so long as existing precedent makes clear beyond reasonable debate that what the officer was doing was a violation of the plaintiff's then-recognized constitutional rights. *Ibid.*

In deciding whether the law was clearly established law at the time of the alleged conduct, courts in the Second Circuit look to decisions of the U.S. Supreme Court as well as decisions of the Second Circuit, and they may also consider decisions from other federal circuit

courts. *Ibid.* If these decisions either dictated or clearly foreshadowed a conclusion that the officer violated a plaintiff's constitutional rights, then this overcomes a defense of qualified immunity. *Ibid.*

As noted above, the Second Circuit recognized long before January 2014 that prisoners retain a limited right to bodily privacy under the Fourth Amendment. *See Covino*, 967 F.2d at 78. Indeed, the Second Circuit stated in 2003—more than a decade before the events at issue in this case—that it had "recognized that female inmates had a privacy interest in protecting themselves from 'the involuntary viewing of private parts of the body' by prison guards of the opposite sex." *Poe v. Leonard*, 282 F.3d 123, 137 (2d Cir. 2003) (citing and quoting *Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir. 1980)).

To be sure, as the Second Circuit noted in *Poe v. Leonard*, the decision in *Forts v. Ward* "did not so hold (but merely assumed for purposes of the appeal) … because the state defendants did not appeal the lower court order declaring such a right." 282 F.3d at 137 n.12. Yet this caveat is of little consequence to the qualified immunity determination because—as discussed above— the law may be clearly established not only by prior court holdings but also by rulings that clearly foreshadow a particular result. *See Horn*, 2021 WL 3776318, at *3.

The privacy right at issue in *Forts* was the right of female prisoners not to be subject to viewing while unclothed by male prison guards. Therefore, the fact that the Second Circuit stated in *Poe* that *Forts* "recognized" such a right is enough to say that, as of 2014, the law of the Second Circuit at least clearly foreshadowed a ruling that it violates the Fourth Amendment for a correctional officer to engage in an involuntary viewing of the private parts of a prisoner's body for no penological purpose.

The decision in *Poe* involved a substantive due process claim by a female civilian against a male state trooper for secretly videotaping her while she was undressing at the state police barracks. Although the facts of that case did not involve a law enforcement officer's unwanted viewing of a *prisoner's* private parts, the Second Circuit stated: "Let us be clear: a police officer violates a person's constitutional right to bodily privacy when that officer manipulates the circumstances to view … that person's unclothed body or partially unclothed body without his or her consent where, as here, there is no conceivable investigative or otherwise proper law-enforcement interest advanced by such a viewing." 282 F.3d at 139. The Second Circuit relied in part on Fourth Amendment precedent including *Forts*, *see id.* at 137–38, and the reasoning and holding in *Poe* additionally supports the conclusion that any objectively reasonable correctional officer would have understood as of January 2014 that it violates a prisoner's Fourth Amendment right to force a prisoner to engage in masturbation to gratify the officer or humiliate the prisoner.

Moreover, in *Hurley v. Ward*, 584 F.2d 609 (2d Cir. 1978), the Second Circuit upheld a preliminary injunction against a "strip frisk procedure" in which correctional officers acting without probable cause required a prisoner "to lift his testicles, bend over, and spread his buttocks to display his anus to the correctional officers." *Id.* at 610–11. The Second Circuit noted that "it is clear to us that … the gross violation of personal privacy involved in the anal/genital searches of Hurley especially in view of the physical and verbal abuse incident to the procedure far outweighed the evidence adduced by the State at the preliminary hearing to justify the searches as a prison security measure." *Ibid.* Because *Hurley* evidently recognized a Fourth Amendment violation inherent in needlessly forcing a prisoner to expose his private parts, this decision also clearly foreshadows a constitutional ruling in White's favor.

Federal appeals court decisions outside the Second Circuit also support the same result. In *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993), the Eleventh Circuit considered a claim by male inmates that it violated their Fourth Amendment rights for female officers to "flirt, seduce, solicit, and arouse[] them to masturbate and otherwise exhibit their genitals for the female officers' viewing." *Id.* at 1027. The Eleventh Circuit stated that "[w]e are persuaded to join other circuits in recognizing a prisoner's constitutional right to bodily privacy because most people have 'a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.'" *Id.* at 1030 (quoting *Lee v. Downs*, 641 F.2d at 1119). The Eleventh Circuit reversed the district court's denial of injunctive relief in light of its recognition of the Fourth Amendment right of a prisoner to bodily privacy in this context. *Ibid.*

The Eleventh Circuit later relied on *Fortner* in 2006 to conclude that a prison guard violated the Fourth Amendment by compelling a prisoner to engage in masturbation. *See Boxer X v. Harris*, 437 F.3d 1107, 1110–11 (11th Cir. 2006). "Harris, a female prison guard, solicited Boxer to masturbate for her viewing. If his allegations are true, Boxer has stated a § 1983 claim for violation of his privacy rights under *Fortner*." *Id.* at 1111.

The Eleventh Circuit's rulings in *Fortner* and *Boxer* reinforce the conclusion that, as of January 2014, Officer Moriarty could not compel White to engage in masturbation to gratify herself or humiliate him without violating the clearly established right of a prisoner to bodily privacy under the Fourth Amendment. Accordingly, I conclude that genuine issues of fact preclude the defense of qualified immunity at this time for White's Fourth Amendment claim against Officer Moriarty.

There is one more procedural point to address as to the Fourth Amendment claim. Officer Moriarty objects to my reinstating the Fourth Amendment claim after having failed to address the claim in my initial review order. District courts are required by law under 28 U.S.C. § 1915A to conduct initial screening reviews of *pro se* prisoner claims, and I do my best to address every well-pleaded claim in a prisoner's *pro se* complaint. But I failed to address the Fourth Amendment claim in this case, and the omission was not apparent to me until after White had the benefit of counsel, who appeared on his behalf and filed an opposition to summary judgment addressing the Fourth Amendment issue.[43]

At that point I had two choices. On the one hand, I could double-down on my failure to acknowledge White's claim under the Fourth Amendment and then probably wait for White to file a successful appeal so that the Fourth Amendment claim could be tried many months or even years from now (perhaps only after a trial had gone forward on other related claims). Alternatively, I could reinstate the Fourth Amendment claim now and take steps to redress any possible unfair prejudice from my oversight by allowing Officer Moriarty a further opportunity to brief the claim.

I chose the better option. Nevertheless, to further reduce any possibility of unfair prejudice to Officer Moriarty, I will allow her to file a motion to re-open discovery within 30 days if she believes there is any aspect of discovery that she would have pursued as to a Fourth Amendment claim but did not pursue before. Any such motion should specify the discovery sought and how it is relevant to the Fourth Amendment claim.

---

[43] Doc. #164 at 16-17.

### Eighth Amendment

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. In *Boddie v. Schneider*, 105 F.3d 857 (2d Cir. 1997), the Second Circuit ruled that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Id.* at 860–61. A prisoner must show that the sexual abuse was objectively sufficiently serious in nature and that the prison official acted with a subjectively culpable state of mind. *Id.* at 861.

Because "[s]exual abuse may violate contemporary standards of decency and can cause severe physical and psychological harm," the Second Circuit in *Boddie* concluded that "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation." *Ibid.* In addition, "[w]here no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Ibid.*

Moreover, the Second Circuit has made clear that the Eighth Amendment reflects evolving standards of decency. Therefore, a court may consider "laws and policies [that] reflect the deep moral indignation that has replaced what had been society's passive acceptance of the problem of sexual abuse in prison" and "make it clear that the sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment." *Crawford v. Cuomo*, 796 F.3d 252, 260 (2d Cir. 2015).

Viewing the evidence in the light most favorable to White, there is enough for a reasonable jury to find that Officer Moriarty violated White's Eighth Amendment rights. As to

the Eighth Amendment's objective requirement that the sexual abuse be sufficiently serious, a

reasonable jury could conclude that repeatedly threatening an inmate with transfer to a supermax

prison facility unless he exposes himself and masturbates to gratify a prison guard or humiliate

the inmate is a serious enough form of sexual abuse. As to the Eighth Amendment's subjective

requirement that the prison official act with a sufficiently culpable state of mind, a reasonable

jury could conclude that Officer Moriarty had no legitimate penological purpose but instead

acted intentionally to subject White to humiliation and to satisfy her own personal desires. "In

determining whether an Eighth Amendment violation has occurred, the principal inquiry is

whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or

strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate

the inmate." *Crawford*, 796 F.3d at 257–58.

Officer Moriarty argues that there can be no Eighth Amendment violation because she

did not physically touch White. I do not agree that the lack of physical contact precludes an

Eighth Amendment claim for sexual abuse. The Supreme Court has made clear that the

protections of the Eighth Amendment do not turn on formalistic distinctions such as whether the

abuse of a prisoner has caused a certain degree of physical injury, because "[o]therwise, the

Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman,

inflicting less than some arbitrary quantity of injury." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)

(quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)).

The same reasoning weighs against imposing a categorical requirement that sexual abuse

must be accompanied by some form of physical contact in order to be cognizable under the

Eighth Amendment. Thus, the Second Circuit ruled in *Harris* that "[w]e do not see why the lack

of contact with Harris's genitalia would bar her Eighth Amendment claim as a matter of law." 818 F.3d at 65.

In *Rafferty v. Trumbull County, Ohio*, 915 F.3d 1087 (6th Cir. 2019), the Sixth Circuit ruled that a correctional officer's "repeated demands that [the prisoner plaintiff] expose her breasts and masturbate are 'sufficiently serious' to implicate the Eighth Amendment under settled case law from the Supreme Court, this Circuit, and numerous other courts of appeals." *Id.* at 1095. Because the alleged abuse "entailed forced sexual acts," the Sixth Circuit rejected the officer's argument that "he did not violate the Eighth Amendment because he did not physically touch [the plaintiff]." *Id.* at 1096.

Officer Moriarty cites precedent that "[a]llegations of verbal sexual harassment or comments by themselves do not state a claim under the Eighth Amendment." *See, e.g., Jones v. Rodi*, 2020 WL 1820816, at *6 (D. Conn. 2020) (collecting cases). But the allegations in this case involve far more than mere insults or verbal harassment. They involve a prison guard's repeated acts of compelling a prisoner to engage in sex acts in a flagrantly degrading and humiliating manner. I conclude that this alleged conduct—if proven—is enough to violate the Eighth Amendment's prohibition of cruel and unusual punishment.

### *Qualified immunity – Eighth Amendment*

Having concluded that there is a genuine issue of fact about whether Officer Moriarty violated the Eighth Amendment, I next consider whether Officer Moriarty is entitled to qualified immunity against the Eighth Amendment claim. As noted in my discussion of qualified immunity above, I must identify the right at issue at an appropriate level of specificity and in a manner that is reasonably particularized to the material facts of this case.

In doing so, I conclude that the claimed right at issue is the right of a sentenced prisoner to be free from being compelled two times by a prison guard to exhibit and engage in masturbation to gratify the prison guard or humiliate the prisoner. This context-specific definition avoids defining the right too broadly (*e.g.*, the right to be free from sex abuse or harassment in general) while also avoiding defining the right too narrowly (*e.g.*, the right to be free from repeatedly engaging in a particular form of masturbation under threat of transfer to a particular supermax prison facility).

I am not convinced that the law of the Second Circuit was clearly established as of January 2014 that it would violate the Eighth Amendment for a prison guard to compel a prisoner two times to engage in masturbation to gratify the guard or humiliate the prisoner. My conclusion is based on the lack of apposite Supreme Court cases and on the factual specifics of two Second Circuit decisions prior to 2014 that declined to find an Eighth Amendment violation for similar acts of sex abuse of prisoners by correctional officers.

I start with the Second Circuit's groundbreaking ruling in 1997 in *Boddie v. Schnieder* which outlined the requisites for an Eighth Amendment claim in the context of a prison guard's sexual abuse of a prisoner. But the panel then went on to rule that the following conduct was *not* objectively serious enough to violate the Eighth Amendment: a clothed prison guard touched a clothed prisoner's penis, called him a "sexy black devil," pressed her breasts against his chest, and pushed herself up against him with her vagina pressing against his penis. 105 F.3d at 859–61.

Five years later, the Second Circuit ruled by *per curiam* decision in 2002 that it did not violate the Eighth Amendment when a correctional official "repeatedly demanded that [a prisoner] have sex with her and that he masturbate in front of her and [] other women." *Morales*

*v. Mackalm*, 278 F.3d 126, 129 (2d Cir. 2002) (*per curiam*). The court ruled that "[b]ecause [the prisoner's] allegations do not even rise to the level of those made by the plaintiff in *Boddie*, they do not state a claim for sexual harassment in violation of the Eighth Amendment." *Id.* at 132.[44]

As of January 2014, the *Boddie* and *Morales* cases were the most factually apposite decisions of the Second Circuit. In light of these two cases, I am not convinced that any objectively reasonable correctional officer within the Second Circuit would necessarily have understood at that point in time that the abusive conduct allegedly engaged in by Officer Moriarty was sufficiently severe to amount to a violation of the Eighth Amendment.

White relies on the Second Circuit's decision in *Crawford v. Cuomo, supra*. But *Crawford* was issued in 2015, which was after the incidents of January 2014 that are at issue in this case. Moreover, although the *Crawford* decision helps White by emphasizing the evolving standard of decency under the Eighth Amendment, the facts in *Crawford* were of sexual abuse involving actual physical contact, and the Second Circuit framed its holding in terms of such actual physical contact: "We write today to clarify the rule set forth in *Boddie*: A corrections officer's *intentional contact* with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." 796 F.3d at 254 (emphasis added).[45]

---

[44] In light of the factual similarities between this case and the *Morales* case, I have considered whether *Morales* compels a conclusion that the alleged acts by Officer Moriarty in this case do not violate the Eighth Amendment. I do not think so for two reasons. First, the *Morales* decision is factually distinguishable because of the lack of indication that the "demands" at issue were made by way of a specific threat like the threat at issue here to transfer White to a supermax facility. In addition, insofar as the holding in *Morales* was based on the earlier holding in *Boddie*, a later panel of the Second Circuit—in recognition of the evolving standards of decency embraced by the Eighth Amendment—has disavowed *Boddie*'s conclusion that the facts in *Boddie* were not enough to support an Eighth Amendment claim. *See Crawford*, 796 F.3d at 260 (noting that "while the standard articulated in *Boddie* remains the same, its applicability must change as the basic mores of society change," and that "conduct that might not have been seen to rise to the severity of an Eighth Amendment violation 18 years ago may now violate community standards of decency, and for that reason, we believe that the officer's conduct in *Boddie* would flunk its own test today").

[45] The Second Circuit's analysis in *Crawford* otherwise focused on the fact of intentional contact. For example, it

Therefore, even discounting the fact that *Crawford* came after the conduct at issue in this case, the *Crawford* decision did not eliminate reasonable debate about whether compelling a prisoner to engage in repeated acts of masturbation—without any physical contact between the correctional officer and the prisoner—is an objectively serious enough form of sexual abuse to violate the Eighth Amendment. Instead, *Crawford* left some doubt about whether actual physical contact was a dispositive distinction between conduct that is abusive and offensive and conduct that amounts to a violation of the Eighth Amendment.

In any event, the Second Circuit eventually affirmed a grant of qualified immunity for the officer at issue in the *Crawford* case, who in 2011 engaged in acts of fondling the penises of two inmates. "We are in full agreement that Prindle's alleged conduct was repugnant and intolerable, and, as we noted at the outset, would clearly not be condoned if it occurred today in light of *Crawford I,*" but "[b]ecause we conclude that the unconstitutional nature of Prindle's abuse was not clearly established in 2011, qualified immunity was properly recognized." *Crawford v. Cuomo*, 721 F. App'x 57, 60 (2d Cir. 2018); *see also Shannon v. Venettozzi*, 749 F. App'x 10, 11–12 (2d Cir. 2018) (similarly affirming qualified immunity from Eighth Amendment claim against correctional officer, who in 2011 engaged in several instances of fondling and grabbing a prisoner's genitals unrelated to any legitimate search for contraband). If the officers in *Crawford* and *Shannon* were entitled to qualified immunity for their wanton acts of fondling and groping

---

stated that "an inmate need not allege that there was penetration, physical injury, or direct contact with uncovered genitalia" to state an Eighth Amendment claim, because "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." 796 F.3d at 257. In discussing the evolving Eighth Amendment standard of decency, the Second Circuit cited the enactment in recent years of many laws "criminaliz[ing] sexual contact between inmates and corrections officers," *id.* at 259, and noting that "[a]lthough the precise conduct prohibited varies by state, sexual contact is generally defined as intentional contact, for the purpose of sexual arousal, gratification, or abuse, of an inmate's sexual or intimate areas by a corrections officer, or of an officer's sexual or intimate areas by an inmate, or of the clothing covering either the inmate or officer's sexual or intimate areas." *Id.* at 259 n.7.

inmates' genitals in 2011, it is hard to see why qualified immunity would not also shield Officer Moriarty.

I have considered the additional precedent that is helpful to White.[46] For example, as already discussed above, I have considered the Sixth Circuit's decision in *Rafferty*, which is the strongest of the out-of-circuit cases in White's favor. The *Rafferty* court not only ruled that a prison guard violated the Eighth Amendment by compelling a prisoner to show her breasts and masturbate, but also rejected the guard's qualified immunity defense. *See* 915 F.3d at 1097 ("it was clearly established that sexual abuse could be sufficiently severe to implicate the Eighth Amendment even in the absence of physical touching by a guard"). The problem is that *Rafferty* conflicts with the countervailing Second Circuit precedent I have discussed above. Accordingly, I conclude that Officer Moriarty is entitled to qualified immunity from White's claim under the Eighth Amendment.

### *First Amendment retaliation*

In order to establish a First Amendment retaliation claim, a plaintiff must show (1) that he engaged in speech or conduct that is subject to protection under the First Amendment, (2) that the defendant took adverse action against him, and (3) that there was a causal connection between the defendant's adverse action and the prisoner's constitutionally protected activity. *See Brandon v. Kintner*, 938 F.3d 21, 40 (2d Cir. 2019). For this third element of a causal connection, it is not enough for a plaintiff merely to show that the defendant took an adverse action in response to the plaintiff's protected activity; instead, a plaintiff must prove that the

---

[46] There is also out-of-circuit precedent that is not helpful to White. For example, as of 2014, the rule in the Eleventh Circuit was that a prison guard who forced a prisoner to masturbate did not violate the Eighth Amendment absent a showing that the prisoner suffered a more than *de minimis* physical injury. *See Boxer X*, 437 F.3d at 1111. Not until 2020 did the Eleventh Circuit abrogate this holding with its conclusion that "[t]he lack of serious physical injury, considered in a vacuum, cannot snuff out Eighth Amendment sexual-assault claims." *Sconiers v. Lockhart*, 946 F.3d 1256, 1266–67 (11th Cir. 2020).

defendant took the adverse action for an improper purpose to retaliate against or penalize the plaintiff's engaging in protected activity. *See id.*; *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 114 (2d Cir. 2011).

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). For this reason, a prisoner's retaliation claim must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Ibid.*

White alleges a First Amendment retaliation claim against Captain Colon, Lieutenant Torres, Captain Maldonado, and Director McNeil, alleging that they issued false disciplinary reports to retaliate against White for his complaint about Officer Moriarty's sexual harassment. These defendants now seek summary judgment on the First Amendment retaliation claim.

Even assuming for present purposes that White engaged in protected speech activity by lodging a complaint about Officer Moriarty, and even assuming that the issuance of a disciplinary report against White was an adverse action, I conclude that there is no genuine fact issue to show retaliatory intent and causation. The record does not show that Captain Colon, Lieutenant Torres, Captain Maldonado, or Director McNeil harbored any retaliatory intent against White to penalize him for complaining about Officer Moriarty.

White's claim against these four defendants rests on an inference that, because they took part in the investigation and issuance of a charge accusing White of lying about his claim of misconduct against Officer Moriarty, their participation must signify that they did so because

they wished to retaliate against White's act of complaining about Moriarty. This inference is speculative and makes little sense.

Suppose, for example, that a police officer receives domestic violence complaints from both a husband and a wife and then interviews both the husband and wife who claim that the other party was the aggressor. If the police officer ultimately decides to believe the wife over the husband and to accuse the husband of lying about what happened, does this tend to show that the police officer reached this conclusion simply because he wished to retaliate against the husband for filing a complaint with the police? I do not think so, yet that is the type of inference White seeks to draw here.

Nor does a genuine fact issue exist simply because White subjectively "believes" that the defendants "were part of a campaign of retaliation against [him] for reporting Moriarty's alleged misconduct."[47] It is well established that a plaintiff's mere subjective belief that a defendant has acted for an improper purpose is not enough to create a genuine issue of fact about the defendant's intent. *See, e.g., Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021); *Henderson v. Massachusetts Bay Transportation Auth.*, 977 F.3d 20, 29 (1st Cir. 2020); *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016).

White critiques the adequacy of the investigation, including faulting two of the supervisory defendants for relying on what their officers told them without conducting a further investigation. But he does not point to any irregularity that could serve as the basis for a reasonable jury to conclude that the reason why any of the four defendants took part in the issuance of a disciplinary charge against White was to retaliate or penalize him for complaining about Officer Moriarty.

---

[47] Doc. #164-1 at 9 (¶ 41a), 10 (¶ 45a).

I also consider that there was substantial evidence for the four defendants to believe that White made a false report. Officer Moriarty steadfastly told investigators that White's allegations were false.[48] White himself admits that none of the inmates interviewed during the course of the investigation substantiated or corroborated his claim against Officer Moriarty.[49]  Indeed, the record shows that White's cellmate reported that White "was caught playing with himself" and "should have manned up and accepted his fate for his wrong doings" rather than "think[ing] he is Johnny Cochran" and "always trying to sue or get over on someone."[50] Another inmate denied that White had told of any incident between him and an officer and added: "I think he is an ass and he did some dumb thing and he found himself covering his ass."[51]

Thus, this is not a case where retaliatory intent might be inferred from the conspicuous absence of evidence to support a disciplinary charge. To the contrary, the record establishes a substantial basis for the four defendants to have decided to credit Officer Moriarty over White and therefore to have reasonably concluded that White made a false report. The substantial evidence that the defendants had to support a disciplinary charge against White undercuts White's claim that they acted for an improper retaliatory purpose. *Cf. Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) (existence of probable cause for arrest precludes claim that arrest was made to retaliate for exercise of First Amendment right to speech).

Of course, my role at this time is not to decide whether it is White or Officer Moriarty who is telling the truth. That is an issue for the jury to decide when it considers White's remaining claims against Officer Moriarty under the First and Fourth Amendments. My role

---

[48] Doc. #163-4 at 19, 23, 41-42, 48.

[49] Doc. #164-1 at 9 (¶ 39).

[50] Doc. #163-4 at 19.

[51] *Id*. at 33.

24

instead is to decide if there is a genuine fact issue to show that the four additional defendants—

Captain Colon, Lieutenant Torres, Captain Maldonado, and Director McNeil—intended to

retaliate against White for complaining about Officer Moriarty. There is not. Accordingly, I will

grant the motion of defendants Captain Colon, Lieutenant Torres, Captain Maldonado, and

Director McNeil for summary judgment on White's claim of First Amendment retaliation against

them.

### CONCLUSION

For the reasons set forth above, the motion for partial summary judgment (Doc. #163) is

GRANTED in part and DENIED in part. The motion is GRANTED as to White's claim against

Officer Moriarty under the Eighth Amendment and as to White's claim against Captain Colon,

Lieutenant Torres, Captain Maldonado, and Director McNeil under the First Amendment. The

motion is DENIED as to White's claim against Officer Moriarty under the Fourth Amendment.

Therefore, this action shall proceed to trial as to the following claims against the following

defendants: (a) against Officer Moriarty as to White's claims under the First Amendment and the

Fourth Amendment, and (b) against Officer Gargullo as to White's claim under the Eighth

Amendment.  I have considered all other arguments and precedent raised by the parties even if

these arguments have not been expressly addressed in this ruling.

It is so ordered.

Dated at New Haven this 3rd day of September 2021.

/s/ *Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge